THE STATE OF FLORIDA *ex rel.* WILLIAM D. BLOXHAM VS. JONATHAN C. GIBBS, SECRETARY OF STATE, *et al.*

| 13 | 55 |
|----|-----|
| 35 | 254 |
| 13 | 55 |
| 39 | 172 |
| 13 | 55 |
| 153 | 688 |
| 13 | 55 |
| 56 | 191 |

1. This Court has the power to grant a writ of mandamus directing the Board of State Canvassers to re-assemble and complete a canvass of the returns of votes cast at a State election where they have neglected to make a complete canvass of the returns in their possession.
2. The object of the law creating a Board of Canvassers of election returns is to ascertain from the returns the whole number of votes cast,

and to determine therefrom and certify the result of the election. They are required by law to meet at a given day for this purpose, and may adjourn from day to day until their duties are completed; and in case legal returns are received by them at any time before they complete the canvass, which would have been counted if received by the day appointed by law, it is their duty to include them in the canvass and certificate, and if they refuse, they may be required by the writ of mandamus to complete the canvass of all the returns received, and to certify the result according to law.

3. A peremptory mandamus will not be granted upon the return of an alternative writ, unless the respondents may be required to do all that is required by the alternative writ, and therefore where the alternative writ required all the members of a Board of Canvassers to canvass the returns and declare the result] of an election, and after that, that one of them in another official capacity should record the proceedings of the Board, and issue a certificate thereon, the peremptory writ was refused: for, until an officer shall have neglected or refused to perform a duty, he cannot be proceeded against by this writ, and the officer who may be required to give a certificate of the proceedings of a Board cannot be so required until the Board shall have acted.

4. An alternative writ of mandamus may be amended.

5. An injunction, restraining a Board of Canvassers from proceeding to canvass and certify the result of an election until the further order of the Judge granting the same, where the statute requires the Board to proceed by a certain day, is unauthorized.

6. Pending the proceedings by mandamus against a Board of Canvassers, the Legislature repealed the law creating such Board, without saving proceedings or duties required by law to be performed by them and uncompleted: *Held*, That the power of the Board to proceed was gone, and therefore the proceedings against them were dismissed.

### MANDAMUS.

Upon petition filed by William D. Bloxham, on the 10th day of January, A. D. 1871, an alternative writ of mandamus to the Secretary of State, Comptroller, and Attorney General of the State, members of the Board of Canvassers of general elections in Florida, was awarded. The alternative writ, which states the case made by the petition of the relator, is as follows :

*The State of Florida to Jonathan C. Gibbs, Secretary of State, Sherman Conant, Attorney General, and Robert H. Gamble, Comptroller, Members of the Board of Canvassers of Florida, and to every of them—Greeting :*

Whereas, it has been suggested to us that an election was held in the several counties of this State on the 8th day of November last, for the election of one Representative in Congress, of a Lieutenant-Governor of the State, and of Senators and Members of the Assembly of the Legislature of Florida, said election being held in pursuance of law and of Executive proclamation; and that at the said election William D. Bloxham, who was and is by the Constitution of this State eligible to and qualified to hold the said office of Lieutenant-Governor, was a candidate to be voted for by the voters of this State to fill said office; and that besides himself, one Samuel T. Day, was also at said election a candidate for said office; and that other than the said Bloxham and the said Day, there was and were no candidate or candidates for the same.

That by the returns of the said election received at the office of the Secretary of State, and now on file in said office, the whole number of votes cast at the said election for the said Bloxham, was thirteen thousand four hundred and sixty-two (13,462) votes, and the whole number of votes cast for the said Day, was thirteen thousand three hundred and ninety-eight (13,398) votes.

That on the 29th day of November last, Jonathan C. Gibbs, Secretary of State, Almon R. Meek, then Attorney General, and Robert H. Gamble, Comptroller, met and organized in the office of the said Secretary as a Board of Canvassers of the State, to canvass the elections returns from the several counties of the State, and determine who had been elected by the highest number of votes, as shown by the said returns, to the several offices above mentioned.

That it then and there appeared from the statements of

the said Gibbs, Secretary of State aforesaid, that no election returns had been received from divers of the counties of the State up to that time. That among the counties from which the said Gibbs then reported that no election returns had then been received at the office of the said Secretary, were the counties of Brevard, Dade, Manatee and Monroe. That the time given by law for the reception of the election returns from the said counties above mentioned had not elapsed at the time of the meeting of the said Board. That a majority of the votes, in the aggregate, of the said counties had been cast for the said Bloxham; and that he had reason to believe, and did believe, that by the time limited in law for the forwarding and reception of the returns at the Secretary of State's office, of the returns from the said counties above named, the returns from all the other counties reported by the said Gibbs, as not having been then received, could be and would be forwarded to and received at the said office of the Secretary of State. That the returns from the counties, whose returns the said Gibbs then reported to said Board had not been received, were necessary for an authentic determination of the result of the said election. That in the absence of these returns, the relator had reason to believe it would be made to appear by the said Board of Canvassers that a majority of the votes cast by the qualified voters of the State, at the said election, had been cast for the said Day, whereas, in truth and in fact, as the relator had reason to believe, and did and doth believe, a majority of said votes were cast for himself.

That a major portion of the members of said Board of Canvassers did then and there show what the relator believed to be a manifest purpose and determination to proceed forthwith to complete, conclude and finish their said canvass, without waiting, as it was their duty to do, for the forwarding and reception of the said election returns from the said counties of Brevard, Dade, Manatee and Monroe; and without waiting for the returns from the counties of

Calhoun, Lafayette, Sumter, Suwannee and Taylor, from which last mentioned counties the returns had not then been received, or if received, were alleged· by the major part of said Board to be in such wise informal and defective as to leave no doubt on the mind of the relator that they would be rejected by the said majority of said Board; and that the said Board, or the major portion of them, as the result of their canvass, would, to the manifest wrong of the relator and of the people of the State of Florida, as he verily believed, determine and declare that the said Day and not the relator had been at the said election elected to the office of Lieutenant-Governor.

That to prevent this alleged wrong and outrage, the rela-tor did then, on complaint filed before the Judge of the Second Judicial Circuit of the State of Florida, setting forth the foregoing facts and others, obtain from said Judge an order for an injuction to restrain the said Board of Canvassers, the said Gibbs, Meek and Gamble, from concluding the said canvass, and declaring the result of the canvass of the election returns until the further order of the said court.

That the said order of injunction was served upon the said Board of Canvassers, and upon each of its members, on the 30th day of November last. That within a few days thereafter, the said Board adjourned until the 26th day of December then next ensuing said adjournment. That about the day of said adjournment, the said Almon Meek resigned the office of Attorney General, and thereupon one Sherman Conant was appointed to fill the vacancy in the office of Attorney General, and the said Sherman Conant having accepted said appointment, and having qualified as Attorney General, became, in pursuance of statute in such case made and provided, a member of said State Board of Canvassers.

That the said Board, consisting of the said Jonathan C. Gibbs, Secretary of State, Sherman Conant, Attorney General, and Robert H. Gamble, Comptroller, did again meet as such Board in the office of the Secretary of State, on the 27th

day of December last, with the avowed object of resuming the canvass of the said election returns.    That the major part of the said Board, to-wit: the said Gibbs, Secretary of State, and the said Conant, Attorney General, did then and there, as said relator was informed and believes and alleges, in defiance and contempt of said order of injunction, resolve and decide forthwith to conclude and finish the said canvass, and determine and declare the result of the said election. That in furtherance and execution of this their resolve and purpose, as the relator was informed and believes and alleges, and for the execution of the same, they, the said Gibbs and the said Conant, withdrew from the said office chamber and office room of the Secretary of State, where by law the board of canvassers are required to make their canvass, leaving the said Gamble in the said office of the Secretary of State, and did go into the office room of the Governor of the State, and there, apart from the said Gamble, did conclude and finish their said pretended canvass, and did, there and then, cast up and add together such election returns as suited their pleasure, and that the returns so canvassed and counted and cast up by them, the said Gibbs and the said Conant, were returns found in the office of the Governor of the State, and not the returns on file in the office of the Secretary of State.    That they, the said Gibbs and the said Conant, having concluded and finished their said pretended count and canvass as aforesaid, in the office of the Governor, did make and prepare and sign, in the said Executive office, and in the absence of the said Gamble, a pretended certificate of the result of the said canvass and count, which having made, prepared and signed, they returned with the same to the office of the Secretary of State, and there presented to the said Gamble for his signature, who refused to sign the same.

That there were then there present, on file in the office of the Secretary of State, the election returns of the election aforesaid from all and every of the several counties of

State ex rel. Bloxham vs. Board State Canvassers—Statement of Case.

this State. That the said Board of Canvassers, in violation of law, and in disregard of their duty, did then and there refuse to count and cast up the election returns from the following counties, to-wit: Brevard, Calhoun, Dade, Lafayette, Manatee, Monroe, Sumter, Suwannee and Taylor, to the great wrong and injury of the relator. That it appears by the returns from said counties on file in said office, there were cast in the said counties at the said election the whole number of two thousand five hundred and eighty-two (2,582) votes; and of these the number of sixteen hundred and thirty (1,630) votes were cast for the said Bloxham, and the number of nine hundred and fifty-two (952) votes were cast for said Day, showing a majority of six hundred and seventy-eight (678) votes cast in said counties for the said Bloxham over the number cast for the said Day.

That the said Bloxham having been informed on or about the 28th day of December last that the election returns of said election had then been received by the Secretary of State from all and every of the counties of the State, he on that day moved the Judge of the said 2d Judicial Circuit for the dissolution of the aforesaid injunction, which motion was then granted, and said order of injunction dissolved. That upon the dissolution of the said order of injunction, it was the duty of the said Board of Canvassers to convene as such Board of State Canvassers and to finish and conclude the said canvass and count, and to canvass and count the election returns of said election from all the several counties of the State on file in said office, and to determine who had been elected by the highest number of votes to the said office of Lieutenant Governor, as shown by the said returns, which said duty you, the said Gibbs, Conant and Gamble, as such Board, have failed to discharge.

That on the 2d day of the present month, the said Wm. D. Bloxham caused to be served upon the said Jonathan C. Gibbs, Secretary of State, Sherman Conant, Attorney General, and Robert H. Gamble, Comptroller, formal notice of

the dissolution of the said order of injunction, and did then ask, request and demand of the said Gibbs, and the said Conant, and the said Gamble, that they do again meet and convene as a Board of State Canvassers, and that as such Board they do conclude and complete the canvass of said election returns, and that they do canvass and count the election returns from each and every of the counties of the State for the said office of Lieutenant Governor, and especially that they do canvass and count the election returns for said office for the counties of Brevard, Dade, Calhoun, Lafayette, Manatee, Monroe, Sumter, Suwannee and Taylor, and that they do determine who has been elected by the highest number of votes to the said office of Lieutenant Governor as shown by the said returns, and that they do make and sign the certificate required of them by law in such case. That notwithstanding the said Board were notified as aforesaid of the dissolution of the said injunction, and were required and called upon as aforesaid, by the said Bloxham, to conclude and finish the said canvass, and perform the duties in and about the same required by law, they have utterly failed and refused so to do, and show a manifest purpose and determination to persist in their failure and refusal. That they have full power and authority to reconvene as such Board and discharge said duties.

That in the said pretended canvass and count of said election returns made by the said Gibbs and the said Conant on the 28th day of December aforesaid, they refused to canvass and count the votes from said counties of Brevard, Calhoun, Dade, Lafayette, Manatee, Monroe, Sumter, Suwannee and Taylor, and by rejecting from the count the returns from said counties they made it appear that a majority of the votes cast at said election for said office of Lieutenant Governor were cast for the said Day, whereas had all the votes and election returns then on file in the office of the Secretary of State from all the several counties of the State been canvassed and counted, as they should

have been, it would manifestly have appeared that the re-
lator, the said Bloxham, had been elected to the said office
of Lieutenant Governor as shown by the said returns.   That
the said Gibbs and the said Conant, being a majority of the
said Board, having made, prepared and signed the aforesaid
pretended certificate as above set forth, the same was re-
corded in the office of the Secretary of State, and a certified
copy thereof was by the said Secretary caused to be pub-
lished in one of the newspapers printed at the seat of gov-
ernment, and the said Secretary did, at some subsequent
time, make and transmit to the said Day a pretended cer-
tificate, pretending to show the number of votes cast at said
election for each person voted for thereat for said office of
Lieutenant Governor, and that said Day holds and claims
said certificate as prima facie evidence of his election to said
office.

That all the actings and doings of said Gibbs and said
Conant, a majority of said Board, in assuming, undertaking
and pretending to conclude and finish the canvass of the
election returns for said office of Lieutenant Governor, and
in making out and signing the said certificate so made out,
prepared and signed by them as aforesaid; and of the said
Gibbs, Secretary of State, in causing a certified copy of said
certificate to be published as aforesaid, and in making out
and transmitting a certificate to the said Day as aforesaid,
were done in defiance and contempt of said injunction, and
were therefore null and void, and were done not in the
manner required by the laws and statutes of this State, but
contrary thereto, as above set forth, and were consequently
null and void and of no effect whatsoever.

That the said canvass and count by the said Gibbs, Sec-
retary of State, and the said Conant, Attorney General,
was illegal in this: that it was done and made not in the
office of the Secretary of State, but in the office of the Gov-
ernor of the State; that it was illegal in this: that it was
done by the said Gibbs and the said Conant, separate and

apart from the said Gamble, the said Gamble being all the while in the office of the Secretary of State and being there in his character as a member of the said Board and not assenting to the separate action of the said Gibbs and Co- nant, but protesting that they had no right to canvass and count the election returns found in the office of the Gov- ernor of the State, but should count and canvass the returns on file in the office of the Secretary of State. That it was illegal in this : that the said Gibbs and the said Conant re- fused to canvass and count the election returns from the counties of Brevard, Calhoun, Dade, Lafayette, Manatee, Monroe, Sumter, Suwannee and Taylor, although the said returns were then on file in the said office of the Secretary of State.

That in contemplation of law there has been no canvass by you, the Secretary of State, and by you, the Attorney General, and by you, the Comptroller, nor by any two of you, of the election returns of the election held on the 8th day of November last for the said office of Lieutenant Gov- ernor, received from the several counties of this State.

That by the returns of the election aforesaid from the sev- eral counties of this State, on file in the office of the Secre- tary of State, it appears that the whole number of votes cast for the said Bloxham, as shown by the said returns in the office of the Secretary of State, were thirteen thousand four hundred and sixty-two (13,462) votes; and the whole num- ber of votes cast for the said Day as shown by the said re- turns, were thirteen thousand three hundred and ninety- eight (13,398) votes. That the said Bloxham received a majority of the votes cast at the said election, as shown by the said returns, of sixty-four votes over the number of votes cast for the said Day; and that he, the said Bloxham, hath a right to be determined and declared by the said Board of Canvassers to have been elected by the highest number of votes cast at the said election for Lieutenant-Governor to the said office; and that it was the duty of the said Board

of Canvassers, on the dissolution of the said injunction, to have canvassed and counted the votes returned from all the counties of the State and on file in the office of the Secretary of State, and to have decided and determined from the said returns that the said Bloxham was elected by the highest number of votes to the said office of Lieutenant-Governor, at said election, as shown by the said returns; and that such is now their duty.

That a majority of the said Board of Canvassers do not deny, but on the contrary expressly admit, that the said Bloxham was duly elected by a majority of the votes cast at the said election to the said office of Lieutenant-Governor, and that the fact so appears from the returns of the said election on file in the said office of the Secretary of State now, and at the time of the said pretended canvass and count, and when the same was concluded and finished; but a majority of said Board sometimes pretend that certain of said election returns were not received sufficiently early to entitle them to be counted, and that others of said returns were so defective and informal that it was the duty of the said Board to reject them from their said count because of such informality, whereas the contrary was true, and that it was the duty of the said Board to canvass and count all the returns from the several counties of the State on file in said office at the date of said canvass and count, irrespective of the date at which they were received, and regardless of any merely formal irregularities and defects appearing on the face of said returns.

That by reason of said failure of you, the said Jonathan C. Gibbs, Secretary of State, and of you, the said Sherman Conant, Attorney General, and of you, the said Robert H. Gamble, Comptroller, to canvass and count, as such Board of State Canvassers, the election returns of said election for Lieutenant Governor as aforesaid, on file in the said office of the said Secretary of State, from all the several counties of the State, and upon the completion of the said canvass

and count to do further as required of you by law in such case made and provided, he, the said Bloxham, has been prevented from receiving the certificate, to which he was entitled, certifying that he had been elected to the said office, and has been prevented from receiving and obtaining from the said Secretary of State the certificate which has been made by law *prima facie* evidence of his election to said office, and is thereby unable to enter upon the discharge of the duties and is prevented from receiving the salary and emoluments of the said office, to all of which he is entitled, and is and has been thereby prevented from taking his seat as the presiding officer of the Senate, at the present session of said body, which, as the duly elected Lieutenant Governor of the State, it was and is his duty and right to do.

That the said William D. Bloxham, the petitioner, is entirely without remedy in the premises unless it be afforded by the interposition of this Court by their writ of mandamus.

Now, therefore, we being willing that full and speedy justice should be done in the premises, do command you, Jonathan C. Gibbs, Secretary of State, and you, Sherman Conant, Attorney General, and you, Robert H. Gamble, Comptroller, that you, or any two of you, forthwith meet and convene as a Board of State Canvassers, in the office of the Secretary of State, to canvass and count all the election returns on file in the said office of the Secretary of State of the said election for the office of Lieutenant Governor, held on the 8th day of November last, and that as such Board of Canvassers you canvass and count the election returns for said office from each and every of the counties of the State, and especially that you do canvass and count the said election returns from the counties of Brevard, Calhoun, Dade, Lafayette, Manatee, Monroe, Sumter, Suwannee and Taylor, which you have heretofore omitted, failed and refused to do, and that you determine who has been elected by the highest number of votes to the office of Lieutenant Governor, as

shown by the said returns; and that you do determine and decide that the relator, the said William D. Bloxham, is shown by said returns to have been elected to the said office, and that you do make and sign the certificate required of you by law in such case, and that you, the said Gibbs, Secretary of State, do record or cause to be recorded said certificate as required by law, and that you, the said Gibbs, cause a certified copy of such certificate to be published in one or more newspapers printed at the seat of government of the State of Florida; and that you, the said Gibbs, do immediately after the completion of said canvass make and transmit to the relator, the said William D. Bloxham, a certificate showing the number of votes cast for each person for Lieutenant Governor at said election; or that you appear before the Judges of our Supreme Court at the Supreme Court Room, on Monday, the 16th inst., at 10 o'clock A. M., of said day, to show cause why you refuse to do so.

Upon the return of the alternative writ, the defendants moved to quash upon the grounds stated in the opinion of the Court. After delivering an opinion sustaining the motion to quash, but authorizing the relator to amend the writ in such respects as the Court deemed necessary, the attention of the Court was called to an act of the Legislature then in session, which had been passed by the Legislature and approved by the Governor, by which the section of the law constituting the Secretary of State, Comptroller and Attorney General a Board of Canvassers, was repealed, the repealing act containing no clause saving the proceedings pending before the Board, or authorizing them to perform duties unperformed or unfinished. Upon a motion to dismiss the proceedings, the effect of this legislation is considered.

*R. B. Hilton* for the relator:

The act of the canvassers was no canvass. They rejected returns which should have been counted, and what was done was in contempt of an injunction of a competent court. 7

Iowa, 186 ; Hilliard on Inj., 164; 1 Swann (Tenn.,) 1. The illegal manner as to place and circumstances in which the pretended canvass was consummated makes it a nullity and void.

The reasoning of the court in the People vs. Supervisors of Greene, 12 Barb., 217, (the case relied upon by the respondents,) has no intelligent meaning as applicable to the present case. The State canvassers here it is manifest can convene and can now legally canvass the election returns. 3 Hill, 47; 7 Wend., 48; 2 Tex., 224; 11 Am. Law Reg., 409 ; 20 Pick., 484 ; 29 Ill., 413 ; 7 Iowa, 186 ; 27 Ill., 242. The specific object sought by the relator here is to procure the certificate showing the number of votes cast for the office of Lieut. Governor, which is *prima facie* evidence of his election. In 29 Ill., 413, the relator sought to procure such certificate. The court held that he was entitled to a compulsory mandamus The relator does not seek by these proceedings to be admitted to an office, or to try his title to an office, but that evidence that he has been elected shall be furnished him. A peremptory mandamus can alone compel its delivery. There is no other remedy. The proceedings here cannot be too late, as they could not have been maintained until the board had by their adjournment consummated their default. 3 Kan., 88.

The conclusion from these authorities is that upon neither ground set forth in the motion to quash should it be granted :

*First*—The court has the power to issue the writ.

*Second*—The facts set forth demand the exercise of this power.

*Third*—The relator has not mistaken his remedy. For the evil complained of, the failure to count the votes and furnish him the certificate, mandamus is the specific and only remedy.

It is insisted by respondents that the Secretary of State does not issue the certificate of election to the person having the highest number of votes as one of the board of can-

State ex rel. Bloxham vs. Board State Canvassers—Argument of Counsel.

vassers. This it is urged is an act done in his official capacity as Secretary of State and not as one of the board, and that it never has been his duty to issue such certificate to the relator, as the board of canvassers had never made a certificate by which it appeared that the relator had received the highest number of votes.

The case of the People vs. Hilliard, 29 Ill., 413, is a complete answer to these positions. In that case the Clerk occupied the same relation as the Secretary of State in this, and the writ was awarded him compelling him to certify the election of the relator. The case here reported is in all respects similar to the present case. See also to this point 7 Iowa, 390.

As to the effect of the statute repealing the section which constituted these officers a board of canvassers, I cite 4 Ga., 208 ; 10 Barb., 223.

*S. J. Douglas* for the relator :

The statute of 1868 prescribes the duty of the board of canvassers.

This act gives no power or authority to the board of State canvassers to reject returns because they were not received on a certain day, or for insufficiency, irregularities or omissions in the returns themselves, or for any other cause. If they may be known as returns, they are to be received and counted.

The statute gives them no discretion in the matter. It makes their duty ministerial and not judicial, and points out the mode and manner in which they shall perform it.

Apart from the statute, they cannot derive this dangerous and extraordinary power from the law and usages in such cases.

When a statute directs a public officer to do a thing within a certain time or on a certain day, without any negative words restraining him from doing it afterwards, the naming

the time will be regarded as directory merely, and not as a limitation on his authority.

Statutes directing the mode of proceeding by public officers are directory, and a strict compliance with their provisions is not essential to the validity of the proceedings, unless it be so declared in the statute.

This rule should be strictly applied to inspectors of elections, and to omissions by them to comply with the requirements of a statute, occurring through ignorance or inadvertence. They are public officers; their acts are of a public character, and concern the public interest, and the rights of third persons are concerned and affected by them. The People vs. Cook, 14 Barb., 290; Holland vs. Osgood, 8 Vt., 280; Pond vs. Negus, 3 Mass., 230; The People vs. Allen, 6 Wend., 486; ex-parte Heath vs. Roome, 3 Hill, 43; The People vs. Holley, 12 Wend., 481; Jackson vs. Young, 5 Cowen, 269; The Mohawk and Hudson R. R. Co., 19 Wend., 143; Rex vs. Loxdate, 1 Burr., 447; 12 Conn., 243, 253, 255.

The duty of a board of canvassers of an election is not judicial but ministerial, in the performance of which there is no discretion to be exercised. They possess no power or authority to judge of the validity of returns or of votes. They are only to receive the returns, if they may be known as returns, and to count the votes, leaving all questions as to their validity or deficiency to that tribunal which is empowered to determine ultimately upon a contested election. 7 Iowa, 186, 390; 14 Barb., 259; 20 Wend., 14; 4 Selden, 67, 89; 20 Pick., 485; 2 Texas, 223; 3 Hill, 43; 2 Carter, 423; 25 Maine, 567.

Mandamus is the appropriate remedy to compel a board of canvassers to do their duty. In every well constituted government the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals, magistrates, and all others exercising public authority. If they commit errors, it will correct them; if they re-

fuse to perform their duty, it will compel them—in the former case by writ of error, in the latter by mandamus. 6 Dane's Abridg., 335 ; 3 Burr., 1265 ; 3 Hen. & Munf., 1 ; 20 Pick., 495 ; 14 Barb., 261 ; 7 Iowa, 199, 392 ; 4 Texas, 405 ; 4 T. R., 699 ; 5 T. R., 66 ; 17 Ill., 168 ; 6 Texas, 457 ; 2 Barb., 397 ; 4 Har. & McH., 429 ; 15 Ill., 492 ; 5 Binn., 102.

*J. B. C. Drew*, Attorney General, for respondents :

The court has not the power to grant the writ in this case. Laws of Fla., 1868, pages 28, 29 and 30 ; 12 Barb., 218.

The facts set up are not sufficient to entitle the relator to the relief demanded. 12 Barb., 218 ; 4 Wis., 797. The relator has not pursued the proper remedy. 12 Barb., 219 ; 3 John. Cases, 78 ; 12 Maine, 304 ; 20 Barb., 302. .

RANDALL, C. J., delivered the opinion of the court.

An alternative writ of mandamus having been issued and served upon the respondents requiring them, as a Board of State Canvassers, to proceed to examine and certify the result of the late special election as it appeared by a canvass of all the returns from the several counties, and to declare the relator duly elected to the office of Lieutenant Governor of this State, and requiring the Secretary of State to record the certificate of the canvassers and to issue to the relator a certificate of his election based upon the result of such canvass, or to show cause before this Court why they should not do so ; and the respondent Gamble having answered, signifying his readiness to comply with the mandate of said alternative writ whenever his co-respondents should join in so doing and proceed with the canvass as required by the relator ; and the respondents, the Secretary of State and the Attorney General, by Mr. J. B. C. Drew, of counsel, now comes and moves the court to quash the alternative writ upon the following grounds :

1. That the court has not the power to grant the writ in this case.

2. That the relator does not state facts sufficient to entitle him to the relief demanded.

3. The relator has not pursued the proper remedy.

In support of the first and second grounds of the motion, it is urged that the respondents having met and made a canvass of the returns of the election which had been received by them on the day appointed by law for proceeding with the canvass, and declared and certified the result thereof in due form, (although other and further returns of said election were received by them before the final conclusion by them, which had not been included in ascertaining the result of the election,) and had adjourned *sine die*, they were, as a board of canvassers, *functus officio*, and had no longer any right or power to act further as a board of canvassers and are therefore not amenable to the process of mandamus, the office of which writ is to compel the performance of a duty which has been neglected and which they have still the power to perform.

This position is taken by the Supreme Court of New York in the case of The People vs. The Supervisors of Greene, 12 Barb., 218, but we cannot adopt it as the law governing the case, and it is entirely overborne by the cases cited by the relator's counsel, decided in Iowa and Illinois. The allegations of the relator show that the respondents have but partially performed their duty and have neglected to comply with the requirements of the law, by refusing to canvass all the returns which were in their possession and which it was their duty to include in determining the result of the election. The respondents are appointed by the law of 1868 to be the canvassers, and their duties are to examine all the returns of the election and to declare therefrom who is elected by the greatest number of votes cast at the election.

The relator alleges that on the 29th day of November,

1870, the respondents met for the purpose of making the canvass, and that at that time the returns had not been received from all the counties in the State; that at the instance of the relator, an order of injunction was procured and served upon them in terms restraining them from further proceeding with their duties until the further order of the Circuit Court or Judge who signed the order; that they thereupon adjourned until the —— day of December, on which day a majority of said canvassers proceeded to certify and declare the result of the election, as the same appeared from the returns which had been received at the time of their first meeting, although it is alleged the returns had been received by them from all the counties in the State before the conclusion of the canvass.

The object of the law is to ascertain the whole number of votes cast, and who had received the highest number of such votes, so that the choice of the majority of the voters might be ascertained and respected. If the facts are correctly stated by the relator, the respondents neglected to perform this duty, and therefore did not comply with the law, in which case they did not conclude their duties as canvassers, nor put an end to their powers as canvassers by an adjournment *sine die*.

Their duties and functions are mainly ministerial, but are quasi judicial so far as it is their duty to determine whether the papers received by them and purporting to be returns were in fact such, were genuine, intelligible, and substantially authenticated as required by law; in other words, whether they contained within themselves evidence that they were authentic returns of the election. If, as is alleged, the respondents neglected to examine and include returns, duly and legally made from several of the counties, and therefore but partially performed what they were required by law to do, it must be considered that they have not complied with the law, and that they may be required to do so by means of the process here invoked.

6

It is insisted by the relator that the proceedings by the canvassers were illegal and void, because they were enjoined by the order of a Judge of the Circuit Court from farther proceeding until the further order of the Circuit Judge; and that the respondents did proceed to declare the partial result of the election, of which the relator complains, before the dissolution of the injunctional order and without a further order of the Judge. We think the order of the Circuit Judge was unadvisedly made, and that in its form and effect it was essentially a perpetual injunction. It forbade the farther proceeding until permission should be granted by the Judge, and was in effect the abrogation of a statute which authorized and required them to proceed with reasonable dispatch, and it was therefore illegal.

In the view we have taken, however, of the merits of the case, the injunction is of no consequence to either party. It may be said that the canvassers would have proceeded to complete their work on the occasion of their first meeting but for the injunction; but this cannot affect the case. They did adjourn or postpone the completion of the canvass until, as is alleged, further returns were received, which they refused to recognize and take into the account.

But it is urged that the relator has not pursued the proper remedy; that the canvass by the Board does not determine the right to the office, and therefore he has yet to pursue his cause of action by the ordinary process of law to determine it.

If this proceeding was intended by the relator to obtain possession of the office, the objection might have force, but he seeks what the law entitles him to, if his statement of facts is correct, viz: a certificate by the canvassers of the result of the election, as appeared by the returns in their possession at the time they made their final statement, to be recorded in the Secretary's office, which would be *prima facie* evidence of such result; and the question is, whether he is entitled to this evidence upon the case stated. We think he is entitled to it, and because he is so entitled, he

may have the necessary process to obtain it.    That another
form of proceeding may be necessary in order to obtain pos-
session of the office and its dignity and emoluments, does
not affect this question.    What he desires is, to procure the
ordinary and proper legal evidence of his *prima facie* right,
upon which he may be enabled to prosecute that right in
the appropriate form of proceeding.

But on examining the alternative writ, we discover that
the relator requires more than he is entitled to upon the
case stated, and therefore he cannot have the peremptory
writ of mandamus in matter and form as demanded.    The
relator prays that the respondents collectively perform a
duty which they have neglected and refused to perform;
and farther, that one of them, the Secretary of State, be
required to record their future proceedings; and that he
give the relator a certificate of his election, to be founded
upon the future determination of the canvassers, which, of
course, he has not neglected or refused to do; and until the
failure or refusal of an officer to perform his official duty,
this process cannot be used against him.    If the entire du-
ties were required to be performed, under the law, by the
Board of Canvassers, as the making the canvass, certifying
the result, entering it of record, and the giving a certificate
to the person appearing to be elected, the writ might go,
upon their failure to perform the first of the series of duties,
to enforce the performance of their whole duty pertaining
to the subject matter.    But the act required of the Secretary
of State to be done after the performance of the duties by
the Board of Canvassers, are not duties pertaining to those
of the Board, but of the Secretary of State as such, and for
which the respondents, as canvassers, are not responsible;
and the fact, that one of the canvassers is the Secretary of
State, who has the subsequent duties to perform, does not
affect the case.    If the Secretary, whose duty it is to do cer-
tain things subsequent to the determination of the canvass,
was not one of the Board of Canvassers, it would scarcely

be pretended that the writ could go against him as such Secretary in the present case, for it would be an abuse of justice to convict one of non-feasance or misdemeanor in neglecting his official duty, either for neglecting to certify to a fact, because the fact does not exist, or where he has not refused to do what may be required, and mulct him in costs when he is not in default. And though the respondents may be required to proceed and complete the canvass, and certify the result, if they and each of them cannot be required in the present proceeding to do all that is commanded by the alternative writ, the peremptory writ cannot issue. Moses on Mandamus; Tapping on Mandamus, and cases cited.

At the present stage, the peremptory writ prayed for must be denied, but the relator may amend the alternative writ so as to avoid the obstacle suggested, and if no legal answer be interposed, he will be then entitled to the peremptory writ.

This court, upon full consideration of this question, held to the same effect in King vs. The Co. Coms. of Columbia, and Davidson vs. the same, 13 Fla.

Before farther proceedings were had in this case, the attention of the court was called to the fact that the Legislature, then being in session, had passed an act which had been approved, repealing the 28th section of the law of 1868, relating to the holding of elections, by which section the respondents were constituted a Board of Canvassers; and the section was not re-enacted, nor does the repealing act contain any clause saving proceedings pending or duties unperformed by them.

After argument, it was announced by the court that the present proceedings must be dismissed, because the Board of Canvassers being a special tribunal created by statute, and their duties created by the statute, the repeal of the statute takes away their functions as canvassers, and they cannot proceed farther in the matter under any law. And

it follows that they cannot be compelled to do what the law does not require of them, not even to finish what they have commenced. This view is sustained in 6 Pickering, 501; 11 Maine (2d Fairfield), 284; 34 Maine, 14; 36 ib., 62; 40 ib., 507; 41 ib., 158; 10 Wis., 481.

The proceedings are therefore dismissed.