Me. Justice Westoott,
dissenting, delivered the following opinion:
I cannot agree with the view of a majority of the court, that in this case we have no power under the Constitution to issue the writ of mandamus. This court has held that officers of the executive department of the government ‘are subject to control by the courts in the exercise of ministerial powers pertaining to elections. All the discretions, if there be any, in reference to ascertaining the actual votes ■ cast throughout the State at a general election in this State, are executive in their character, in so far as the fact that they are exercised exclusively by officers of the executive department of the government renders them executive. The Comptroller, the Secretary of State, and Attorney-General constitute the Board of State Canvassers of elections. In the case of the State ex rel. Drew vs. The Board of State Canvassers, (16 Fla., 1,) these executive officers were thus controlled. So in the case of the State ex rel. Bloxham vs. The Board, (13 Fla., 55,) they were thus controlled, and in the very matter now before this court, a majority of this court directed the Board of State Canyassers to count a return of an election in Madison county, which the board thought false within the meaning of tiie statute .defining their powers, but which the court held to be such as should be counted. (The State ex rel. Bisbee vs. The Board of State Canvassers, 17 Fla.) These acts which we have thus controlled are not only executive in their character, but, in addition thereto, they are executive duties imposed by law, the performance of which is eminently essential to the orderly conduct of the government. They are not ex-officio acts of trustees of funds or private eleemosynary institutions.
The executive acts which we controlled in the case of the State ex rel. Drew vs. The Board of State Canvassers, (16 Fla., 1,) were acts which, when exercised, conferred a prima facie right to the office of Governor itself, in which act, too, a consideration of the exercise of the elective franchise, by all the qualified -voters of the State, was involved. Certainly there is no more important ministerial executive act than that. Nor have I ever doubted the power to thus control ministerial executive acts-of this character. They involve no political or other discretions, and the fact that the party to be controlled is an executive officer, or that he belongs to another department of the government, does not and has not, with this court, controlled its action. Up tv this time I conceive that I have followed the well-considered statement of the law upon the general subject, as it was announced by Chief Justice Marshall in the early days of the republic, which is that "it is not by the office of the person to whom the writ is directed,but the nature of the thing required to be done that the propriety or impropriety of issuing a mandamus is to be determi/n-ed.” 1 Crunch, 171.
What is the act here to be performed? It is simply the making out and signing a certificate pf election by an executive officer. This act is based upon a statement of majorities made by the Board of State Canvassers, with the making of which the Governor under the law has nothing to do. It is a simple and pure ministerial act of an executive officer, in its essence and nature no more discretionary or political than the act of the Secretary of State in certifying to the election of a member of the Legislature. 'It is an act which the Legislature might have devolved upon the Secretary of State or any other subordinate executive officer. Indeed, in the preceding section of the very law which, makes it the duty of the Governor to sign this certificate as to 'the election of a Representative in Congress, the duty to issue a like certificate to all State Officers elected, as shown by the canvass and count of the Board of State Canvassers, is imposed upon the Secretary of State.
The act being thus a purely ministerial act of an executive officer, it is, in my judgment, just such an act as we have controlled in the past by mandamus. In speaking of the nature of the act of a Board of State Canvassers when they are required by law to make a certificate of a character essentially like that which the law requires at the hands of this executive officer here, we said in thw case of the State ex rel. Drew vs. The Board of State Canvassers, (16 Fla., 44.,) that with the exception of the courts of Louisiana, and perhaps another State, no sanction could be found for the view that such an act could not be controlled by mandamus. The true doctrine upon this question, when we reason from general principles well established by abundant precedent in England and the United States, is that where the act sought to be controlled is a ministerial act, as contra-distinguished from one involving a discretion, and upon its exercise depends a right of the citizen to enforce which there is no other remedy, then the writ of mandamus lies. This is the doctrine as applicable to executive ministerial acts as distinguished from acts political or involving discretion, as announced by Chief Justice Marshall in the Marbury case. In stating the conclusion of the court-in that case he says, that as to “acts in which the execu--trve possesses a constitutional or legal discretion, nothing can be more perfectly clear than that these acts can be only politically examinable;” but he says, “when a specific duty is assigned by law, and individual rights depend upon the performance, of that duty, it seems equally clear that the' individual who considers himself injured has a right to resort to the laws of his country for a remedy.” In this case also Chief Justice Marshall remarks: “The province of the court is solely to decide on the rights of individuals, not to inquire how the executive or executive officers perform duties in which they have discretion; questions in their nature political, or which are by the Constitution and laws submitted to the executive, can never be made in this court.” Here we have an accurate and clear statement of what constitutes a political or discretionary act, as distinct from one involving nothing beyond a ministerial» function.
Having thus ascertained the principle of law applicable to executive ministerial acts, I have, in my judgment, no more to do in this case than I would in any other- case involving a question of title to land or other ordinary action at law, and that is to apply the principle to the case. I have simply to say that the Governor is an executive officer; he has failed to perform a purely ministerial duty; the relator’s right is thereby violated, he is entitled to this remedy; it is my duty to. give it to him, and independent of and without reference to the extent of the physical power under the control of the respondent, or of such forces as he may induce to co-operate with him in resistance, a thing which, in my judgment, has nothing to do with the question, I shall award the writ.
As an answer to what I have written, it may be said that the act of the Governor is here sought to be controlled, and in the cases from which I deduce my principle, it was the act of the head of an executive department or bureau ¡ *29 of the Federal Government, and of the Secretary of State, Comptroller, and Attorney-General of a State. I admit the difference and at the same time1 I do not hesitate to say that according to the plainest rules of construction, according to the clear letter of the Constitution of this State, it is a difference without a distinction here. The difference is in nothing but in the degree of the office. One is a higher office than the other, but both are executive— the act to be done being in its nature essentially the same.
If it be true as a general principle that executive officers may be controlled in ministerial acts, I enquire whether, 'under the Constitution, this simple difference in degree renders the ministerial acts of one not the subject of judicial control, while the same apt of the other is.
The only clause of the Constitution which has any bearing upon this question is Article III. This article, in general terms, distributes the power of government. It provides that "the powers of the government of the State of Florida shall be divided into three departments, Legisla-, tive, Executive and Judicial, and no person properly belonging to one of the departments qhall e'xereise any functions appertaining to either of the others, except in those cases expressly provided for by this Constitution."
There is no doubt that, under this distribution of power, there is nothing which elevates the Governor over any other executive officer. The limit as to the power and function belonging to an executive officer is not because he is one officer or another; not because he is the Secretary of State or Governor, but because the power or function to be exercised belongs to the Executive department of the government.
In directing a ministerial act to be performed, we are discharging a judicial function; so, likewise, in a case involving individual right, we have authority and power to determine the right of an individual, and if it depends upon the performance of a ministerial function by an executive officer, we may direct its performance by him. This is the law to which all executive officers owe obedience, and, under the Constitution, the Governor is not above and. beyond the law. I do not see any ground for making this officer an exception.
Much is said in tire cases upon this subject, as to the different departments of the government revolving in their own spheres; the necessity for harmonious administration of the power of government, &c. These are phases from which elegantly-rounded periods may be prettily constructed, apothegms which add interest to dry legal essays. They are destitute, however, of anything akin to a logical syllogism; are wanting in legal accuracy; tend only to confuse, and are the means ready at hand under which too often the sacred right of a citizen is liable to be forgotten..
I cannot see -that the Governor is above the law. As remarked by Chief Justice Marshall, "the very essence of civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an jnjury. One of the first duties of the government is to afford that protection. In Great Britain the King himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court.”
When a mandamus goes to an executive officer to control his action, this court acts strictly within its recognized sphere of action, and for that reason, in such a case, I can see no ground for .complaint or conflict. We act within our sphere of action when we pronounce an act of the Legislature unconstitutional, and whenever a private right is involved, it is our function and duty to review the action of the Legislature to determine the ■meaning of the Constitution,that "being involved in fixing the individual right, and to act upon our own judgment in the premises.
The Legislature may provide rules of practice for us, and wc must comply with them so long as they are of a' nature admitted to be within' the power of the Legislature. This., is a function of that department of the government. It is said that the power cannot 'exist in the courts, because the right to determine what is a ministerial act involves the power to determine that acts resting in discretion are ministerial, and hence the court may, under such a principle, usurp control of all • the power of government. I see nothing in this; the same thing may be said of all judicial powers. The power to finally decide the right in. a contest between individuals involves the power to decide wrong as well as right, and yet it is no answer to a claim of such general power. And if it be true that the Governor is in all cases the final judge of his own powers, and the Judiciary arc tied by his simple declaration in a given case that lie is discharging an executive function, why cannot he heai* causes and enter judgments in ordinary actions under a claim that power of this character is executive?
It is now, and has been since the time of Lord Mansfield, a function of the courts,'1 when a matter of private right is involved, to control ministerial acts of executive officers. It is in such a case a judicial function to determine what is a ministerial act, and if the act be that of the Governor, the Constitution makes no difference as to it. But it is said we cannot enforce our writ. As to this I simply state a self-evident proposition. Whether a court has adequate physical power to enforce any process, is not the method by which to determine its jurisdiction to issue it. The question of adequate power depends upon the amount and na-tuje of the resisting power, and the degrfee of power which the court can, bring to bear in the contest, neither of which. matters determines the extent of the legal jurisdiction of any tribunal, whether it be one executive, legislative or judicial in its character. An apprehension of such a collission, however, would be no* excuse for my non-performance of what I conceive to be a plain duty upon which depended the enforcement of the right of a citizen.
As to the cases upon the subject, there are "different decisions in Missouri, Minnesota and Georgia. The courts of Arkansas, Rhode Island, Illinois and Louisiana are against the jurisdiction. The courts of Alabama, North Carolina, Maryland, Ohio and California assert the power. What Judge Cooley says (29 Mich., 320,) is mere dictum. The court there held the act in question to be "not one of a pure ministerial character where he is left to no discretion.” There was no ministerial act in the case. The case in 1 Dutcher, 343, was a case in which "the applicant, upon the facts disclosed, was not entitled to the relief sought for.” The court was "asked to direct a commission to issue in direct conflict with the act.”
The case in Pennsylvánia, which I have not seen, seems to concern some communications which, under the general principles of law, are privileged.
Whether the fact that the Governor having issued .a prior certificate, under the circumstances of this case, is a sufficient answer to the writ, is a question as to which I do not think it is necessary for me to express an opinion. I will say, however, that there is, in my judgment, a manifest difference between his failure to issue a second certificate upon- a new statement made by this board, and a failure of the board itself* to make a full legal canvass of returns before it, which was the case in'* the State ex rel. Bloxham vs. Secretary of State et al. (13 Fla., 55,) and as in The State ex rel. Drew vs. State Board, (16 Fla., 1.)