# SUPERIOR COURT.

THE STATE OF DELAWARE UPON THE RELATION OF SAMUEL L. SHAW *et al.* *vs.* THOMAS MCCOY *et al.*, INSPECTORS OF ELECTION IN THE SEVERAL ELECTION DISTRICTS OF THE COUNTY OF KENT IN STATE OF DELAWARE.

Kent County, Special Term, 1897.

**Statute. Mandamus. Election. Board of Canvass.**—Where after a General Election, the Board of Canvass had failed, properly and legally, to ascertain the state of the election, pursuant to the statute then in force, and the General Assembly had repealed all those portions of the Revised Code which constitute the Inspectors of Election a Board of Canvass, and substituted in lieu of them, as such Board, the Associate Judge, the Sheriff and Register of Wills of each County, *held*, that the repealing act did not prevent the issuing of a peremptory mandamus to compel the inspectors to reassemble as a Board of Canvass and perform their legal duty as such.

**Same.**—The Legislature may change the method of ascertaining the results of an election but it cannot by an act for that purpose, prevent the ascertainment of the results of an election held prior to its passage.

**Election.**—Under our form of Government, an election is the constitutional expression of the sovereign will of the people, as to who shall be their accredited agents to execute the laws and to preserve their rights and liberties; and by necessary intendment, it involves every element necessary to the complete ascertainment of such expression of popular will, embracing the entire range from the deposit of the ballot by the elector, up to the final ascertainment and certification of the result. An election by the people, means and includes the perfected ascertainment of such result.

**Statute. Retroactive Legislation.**—The Courts will not give to a statute a retrospective operation, unless compelled to do so, by express provision.

**Constitutional Law. Statute. Election.**—After an election is held under the

Constitution, the Legislature cannot enact a law which would have the effect to stop all inquiry into it and prevent the ascertainment of its results. An act having such a necessary construction would be unconstitutional. The right of the people to hold an election and to have its results duly and fully ascertained and enforced, is a vested Constitutional right which cannot be destroyed by legislation.

After the decision of the Court of Errors and Appeals in the case last reported, further proceedings were taken in the Superior Court, intended to cure the defects in the previous proceedings, as pointed out by the opinion in the Court of Errors and Appeals.

Therefore as preliminary to the application for the Mandamus applied for in this case, several distinct Writs of Mandamus were applied for and obtained, directed to the several inspectors and election judges in certain Districts of the County to compel the making of proper returns and certificates of election from the Hundreds and Election Districts in which the duty of the election officers had not been fully performed.

These preliminary proceedings were set forth in the present petition, substantially as follows:

That on January 15, 1897, the relator in this case instituted proceedings by petition for Mandamus against the Inspector and other election officers of the general election of 1896, in West Dover Hundred, upon which a peremptory Writ of Mandamus was issued, pursuant to which the said Inspector and Judges did, on January 30, 1897, make and sign two certificates of the said election in West Dover Hundred, according to the form prescribed in the Statutes of the State of Delaware, stating every office for persons to fill which votes had been given at said election, in said Hundred, the name of every person to whom any vote had been given for such office, and the number in words at length of votes given to such person for the said office, and thereupon, on the day last aforesaid, the said Inspector and Judges deposited within the ballot box of said Hundred containing the ballots and tally lists of said election in said Hundred, one of said certificates so made as aforesaid.

And one of said Judges (not being the Inspector) as directed by said peremptory Writ of Mandamus, secured the lid of said box containing the ballots, tally lists, certificate and all other matters and things which it ought under the law to contain, by tape crossed and sealed in sealing wax. And as directed by said peremptory Writ of Mandamus, the said Thomas H. Baxter, as Inspector as aforesaid, took into his custody, control and possession the ballot box of said Hundred with its contents, and retained the other of said certificates of election in said Hundred, in his possession; and in further obedience to said writ the said Inspector, kept in his custody and possession said certificate of election in said Hundred, together with the ballot box of said Hundred, with its contents, in the same condition as they did, on the said 30th day of January A. D. 1897, come into his hands as last aforesaid, and, as was averred in the petition in this case, was ready and willing, as commanded by said peremptory Writ, to produce the certificate of election in said Hundred, and the ballot box thereof with its contents, when and where, under the circumstances, and for the uses and purposes which the Superior Court should order and direct.

That the Inspectors and Judges of certain Districts in the County, viz: Western Election District of Duck Creek Hundred, Election District No. 1, of East Dover Hundred and West and East Election Districts of North Murderkill Hundred, Election Districts Nos. 1 and 2 of South Murderkill Hundred, Western and Eastern Election Districts of Milford Hundred did not, when said election was closed and when the reading and counting of the said votes cast in the said respective Election Districts last aforesaid, were completed, in accordance with the Statutes of the State of Delaware, in that behalf, forthwith make and sign two certificates of election in their respective Election Districts according to the Statute of the State of Delaware in that behalf, in that the said several Inspectors and Judges in this paragraph mentioned did not state or show for which Hundred for the office of Levy Court Commissioner each of the said candidates for the office of Levy Court Commissioner, received the votes cast and given for him.

With this omission and exception, when said election was closed, and when the reading and counting of the votes in said several Election Districts was completed, the Inspectors and Judges in these Districts did make and sign two certificates of election in each of their respective Election Districts according to the form prescribed in the Statutes of the State, stating every office, to fill which votes had been given at said election, the name of every person to whom any vote had been given for such office, and the number in words at length, of votes given to such person for the said office.

That therefore, to enable the Board of Canvass when reconvened under the present proceeding, to perform its whole duty, the relator in this case, on February 20, 1897, instituted such appropriate proceedings in this Court by way of ten several petitions, for a like number of writs of mandamus, one against each of the said several Inspectors and the other officers of election in said several election districts last mentioned and on March 20, 1897, pursuant to each of said ten writs of mandamus, the said Inspectors and Judges of election in their respective election districts, did, in the said two certificates of election in their said several and respective election districts, state and show in writing according to the form in the Statute prescribed, and as in said several writs they were directed to do, the name of the Hundred for the office of Levy Court Commissioner for which, the said candidates received the votes cast and given for them respectively; and that on the day and year, last aforesaid Alexander J. Draper, Inspector, and the Judges of the said election in the West Election District of North Murderkill Hundred, he, the said Alexander J. Draper, not being able and failing to then produce to the said election officers of the said election in the said Hundred, then convened by force of one of said alternative writs of mandamus to them directed, the certificate of election in the said Hundred, and which had not been deposited in the ballot box of the said Hundred, but which said certificate had, on the day of said General Election, been kept by said Alexander J. Draper, as Inspector, as aforesaid, and as required by Section 23 of Chapter 18 of the Revised Code of

the State of Delaware, as amended and published in the year A. D., 1893, stating every office for persons to fill which votes had been given at said election, the names of every person to whom any votes should have been given for such office, and the number in words at length of votes given to such person for the said office, as directed in said alternative writ.

And that on the said 20th day of March, A. D. 1897, Levi G. Sterner, Inspector, and the Judges of election in the Eastern Election District of North Murderkill Hundred, the said Levi G. Sterner not being able and failing to then produce to the election officers of said Hundred, (then convened by force of one of said alternative writs of mandamus to them directed), the certificate of said election in said Hundred and which had not been deposited in the ballot box of said last mentioned election district, but which said certificate had on the day of said General Election been kept by Levi G. Sterner, as Inspector, as aforesaid, as required by Section 23 of Chapter 18 of the Revised Code of the State of Delaware as amended and published in the year A. D., 1893, did then forthwith make and sign a certificate of election in said Eastern Election District of North Murderkill Hundred, in lieu of said other certificate not produced as aforesaid, according to the form prescribed in Section 7, Chapter 18 of the Revised Code of the State of Delaware as amended and published in A. D., 1893, stating every office for persons to fill which votes had been given at said election, the names of every person to whom any votes should have been given for such office, and the number in words at length of votes given to such person for said office.

And that on the said 20th day of March, A. D. 1897, the said several inspectors of said election and the said judges of election in the said several election districts enumerated, after completing or making as aforesaid the said several certificates of said election in their said several election districts, enumerated as aforesaid, did, according to the commands of said several alternative writs of mandamus, to them respectively directed, deposit within the ballot box of their said respective election districts, which contained the

ballots and tally lists of their said several respective election districts, one of said certificates of said election in each of their said several respective election districts so completed or made as aforesaid. And that on the day and year last aforesaid, one of the said judges of election (not being the inspector) in each of said ten election districts last mentioned, as directed by each of said alternative writs of mandamus, did secure the lid of said ballot box of his respective election district containing the ballots cast therein at said election, said tally lists, certificates made or completed as aforesaid, and all other matters and things which it ought, under the law in that behalf, to contain, by tape crossed and sealed in sealing wax. And that thereupon each of the said inspectors in said ten districts kept as commanded by said several writs of mandamus the other certificate of election in their several and respective election districts, so made or completed as aforesaid, and the said ballot box of each of their said respective election districts, each with its contents as aforesaid, in the same condition as they did come into his hands, as last aforesaid and as averred in the petition in this case, stood ready and willing to produce said other certificate, made or completed as aforesaid, of said election, and said ballot box with its contents in the same condition, of his said respective election district, when, where, under the circumstances and for the uses and purposes which this Court should thereafter order and direct.

The other facts set forth in the present petition, and upon which this application for a mandamus is based, are the same as those alleged in the petition of mandamus in the case of *State, ex rel. Allee, et al., vs. McCoy et al., supra,* p. 465, to which reference may be made for the same.

The answer of the respondents, in the first twelve paragraphs, contain allegations substantially the same as set forth by way of defence in the case just cited, and which under the final decision of that case and the legal proceedings subsequently taken, and hereinbefore recited, were not considered by the Court to be material.

In paragraph 13 of the answer the present respondents set up as a

defence, "An Act to amend Chapter 18 of the Revised Statutes," passed April 16, 1897.

By Section 1 of that act, Sections 23-28 of Chapter 18 of the Revised Code, were stricken out and new " sections were inserted in lieu thereof." The new sections so substituted, provided in substance as follows:—Section 23, directed that after the counting of the votes at an election, the Inspector and Judges should make and sign three certificates thereof, and put the same in separate envelopes with the proper endorsement prescribed by statute, writing their names " crosswise the sealing." The tally lists duly signed by the Inspector, Judges and clerks, with one of the envelopes containing the certificate, were to be deposited in the ballot box, the lid of which should be secured, by tape crossed and sealed in sealing wax, by one of the Judges not being an Inspector. Another of the envelopes containing the certificate, and the ballot boxes, should be kept by the Inspector and the third envelope by one of the Judges, not being of the same political party as the Inspector. All the envelopes and the ballot boxes should be produced at the Court House before the Board of Canvass. Section 24 constituted the associate Judge, Sheriff and Register of Wills of the County, a Board of Canvass, the first named, being the presiding officer, or in his absence, the prothonotary to be a member and presiding officer. Section 25 directed the delivery by the Inspectors and Judges to the presiding officer of the Board, of the envelopes containing the certificate of election, and the ballot boxes, etc. It further provided for opening the ballot boxes if the certificate produced by the Inspector and Judge did not agree. Section 26 made provision for sending returns in case of death or other casualty affecting the Inspector or Judge. Section 27 provided penalties for the neglect or refusal of the Inspector or Judge to perform his duty and also summary process to be used in such case. Section 28 directed the public canvass of the votes by the Board.

Sections 2-5 of the act provided for amendments of Sections 29-32 of Chapter 18 of the Revised Code, which were necessary to effectuate the change in the composition of the Board of Canvass.

Section 6 of the act provided for striking out Section 34 of Chapter 18 of the Revised Code and inserting a new section requiring the delivery of the ballot boxes by the Board of Canvass to the Sheriff to be by him kept until the last Saturday in February, succeeding the election, on which day, the Board of Canvass should meet and cause the ballots, certificates, etc., to be burned, except where notice of contest had been served. Section 7 of the act provided verbal amendments to Section 35 of Chapter 18 of the Revised Code made necessary by the change in the composition of the Board.

The effect of this act was the question mainly in controversy in this case. It was contended on behalf of the respondents that, by force of the act, the old Board of Canvass was abolished, and could not now be legally reconvened or exercise any function.

On the return of the respondents to the alternative writ a motion was made in behalf of the relators to quash the return and on this motion, the case was heard on the merits.

*W. H. Hayes* and *H. H. Ward* in support of the motion.

The General Assembly had no constitutional power to enact the act of April 16, 1897, and to make it apply to the General Election of 1896. It had no power to prevent the ascertainment of the result of that election. It might have provided by law for a different mode of ascertaining that result but it could not indirectly produce a state of affairs which can exist, only by reason of there being no General Election in 1896. *Rice vs. Foster*, 4 Harring. 485. Hence if the legal result of applying the act to the Board of Canvass of Kent County of that election in 1896, will prevent the ascertainment of the result, it cannot be so applied.

If possible, the Court will construe the act so that it will stand, and of two possible constructions, that will be adopted, which accords with right and justice. The Court will not be astute to find reasons to declare it unconstitutional but will avoid such conflict and validate the act.

Nor will the Court give to the act a retrospective operation if

it be susceptible of any other. *Smith vs. Clemson,* 6 Houst. 180; *Jones vs. Wootten,* 1 Harring. 79. In order to construe an act as being retrospective there must be express words, or such necessary implication, as amounts thereto. Here there is neither. All the words and expressions of the act are either " in *presenti* " or " in *futuro.*" There is no express reference to any prior election; neither by word or implication does the act require such construction as to give it a retrospective operation. *Twenty per cent. cases,* 20 Wall. 187; Black, Const. L. 70, 543-4; Black, Interpretation of Law 247-255; Sutherland, Stat. Const. §§ 463-4; Cooley, Const. Lim. 77, 455; Endlich, Interpretation of Statutes §§ 271-2; Hare, Const. L. 812 and note 6.

The prospective construction of the act is assisted, not only by the absence of any reference to any prior election but also by the fact that there is no saving of the rights of anybody involved in the previous election.

It is the legislative intent which is to govern the Court in the construction of the act and not the intent of anyone who was instrumental in securing its passage. This legislative intent must be sought solely within the act itself and in this case it is shown by the absence of any provisions applying to the election of 1896, the result of which, it would be impossible for the new Board of Canvass, to ascertain. Hence either the old Board of Canvass must ascertain the state of the election or it cannot be done; *Bailey vs. R. R. Co.,* 4 Harring. 389. If there be no such ascertainment it results that there was no election which condition is prohibited by the Constitution. Const. of Del. Art. IV., §§ 1, 2; Art. III., §2; Art. II., §§ 2, 3; Art. VII., § 3. There is a Constitutional right of the inhabitants of the State to hold the General Election on the day and in the manner prescribed by the Constitution. The essential idea of an election involves choice which includes *ex vi termini,* an ascertainment of the persons and things, chosen and of the will of the persons invested with the power of choosing. The ascertainment of the result must be coextensive with the district for which officers were chosen. Accord-

ingly an election of County officers for the County of Kent, neces-
sarily involves the ascertainment of the results of the votes cast
and is not complete without it. The Constitutional provision is
that " all elections shall be free and equal " and any construction of
these words must assume that they mean that the election author-
ized and directed by law shall in fact be held.

Another principle involved in the construction of this act is
that where individual rights are affected by legislation, it will be
construed to preserve and not to destroy them. It must be ad-
mitted that such rights have accrued to every voter who cast his
ballot at the election of 1896. Every citizen and tax payer of the
County has an interest in the result of that election which is neither
problematic or uncertain ; it is more than political interest, being such
as arises from the due administration of the law and the care of the
finances of the County ; and it was a right fully vested at the time
of the passage of the act. Black, Const. L. 429 ; Black, Interpre-
tation of Law, 256, 259 ; Suth. Stat. Constr. § 480 ; Cooley, Const.
Lim. 437 ; Endl. Interp. Stat. § 273. No construction can be
given to the act which will destroy vested rights and the elective
franchise is a right protected and enforced by the law as jealously
as are what are generally termed mere property rights, nor may the
citizen be deprived of such right otherwise, than by due process
of law. *State vs. Stayton,* 5 Coldw. (Tenn.) 233, 243.

*Penington, Hughes* and *Kenney,* in reply.

LORE, C. J., delivered the opinion of the Court.

The peremptory writ of mandamus prayed for in this case is
to compel the Board of Canvass of Kent County to recanvass the
vote cast in that county at the last general election, held Novem-
ber 3, 1896, for the election of Governor, Senators, Representatives,
Sheriff, Coroner and other officers. The facts of the case are
mainly those set out in the case of *The State ex rel. Allee et al.
vs. McCoy et al.,* tried in the Superior Court of this county and

reviewed in the Court of Errors and Appeals January 4, 1897. They need not again be recited here.

The additional facts are,—That pursuant to a peremptory writ of mandamus issued out of this Court, the election officers of West Dover Hundred, on January 30, 1897, made and signed two certificates of the election in their hundred according to law. In ten other election districts the certificates of election under like peremptory writs were completed March 20, 1897, so as to show for what hundred the respective candidates for Levy Court were voted for.

To the alternative writ of mandamus issued in this case the respondents have filed their answer or return. The relators claim through their counsel, that upon the face of the answer, on the respondents' own showing, the peremptory writ should be awarded; and by their counsel have moved the Court to quash the answer for the reason that it is ambiguous, argumentative, evasive, and insufficient.

The answer of the respondents up to and including paragraph 12 relates to matters that are either immaterial or such as have been passed upon and settled in the previous determination of this election controversy. They are therefore eliminated from our consideration.

The question remaining for us to determine is the one raised by paragraph 13 of the answer, which sets up an act of the General Assembly of this State, entitled "An Act to amend Chapter 18 of the Revised Statutes," passed at Dover April 16, 1897, which act repeals all those portions of the chapter which constituted the inspectors of election a Board of Canvass, and substitutes, in lieu of them as such Board, the Associate Judge, the Sheriff and Register of Wills of each county.

It is contended for the respondents that this act abolishes the Board of Canvass of which the respondents were a part, and that there is now no law under which they can be compelled to recanvass the returns of said election, the statute having taken away their functions as a Board of Canvass.

The interpretation and effect of this statute uder our constitu-

tion and laws relating to elections is the question presented for our consideration.

The Constitution of this State provides for the election of Governor, Senators, and other officers named, and prescribes for the purity and freedom of the elections; and the bill of rights provides that all elections shall be free and equal.

The election of November 3d, 1896, was held under the provisions of the Constitution naming the day and prescribing the mode by ballot. Art. 4, Sec. 1. By the same section the Legislature is by law to "prescribe the means, methods and instruments of voting so as best to secure secrecy, the independence of the voter; preserve the freedom, and purity of elections and prevent fraud, corruption and intimidation thereat."

Under our form of Government, therefore, an election is the Constitutional expression of the sovereign will of the people, as to who shall be their accredited agents to execute the laws, and to preserve their rights and liberties.

By necessary intendment therefore, an election under the Constitution involves every element necessary to the complete ascertainment of such expression of the popular will, embracing the entire range, from the deposit of the ballot by the elector up to the final ascertainment and certification of the result. An election by the people means and includes the perfected ascertainment of such result.

Statutes may and do provide the means for ascertaining such results. Their function is to ascertain and not to defeat such results; to carry into effect and not to annul Constitutional provisions. The act of April 16, 1897, amends Chapter 18, by striking out all those sections which constituted the inspectors a Board of Canvass, and substituted the Associated Judge, Sheriff and Register of Wills of each county as such Board.

As to future elections, this act unquestionably provides a new Board of Canvass to ascertain and certify the results thereof. What is its effect however upon the election of November 3, 1896, which has not yet been certified, and under the decision of the Court of

Errors and Appeals, could not be lawfully ascertained and certified
with the vote of West Dover Hundred out.

At the time of the passage of the last named act the election
of November 3d had been held under the Constitution. The
choice of the people had thereby been expressed by ballot under the
Constitution, but the result had not been lawfully ascertained and
certified. Under this condition of facts, does that act stop all fur-
ther inquiry into and annul the election of 1896? Unless it can
be lawfully ascertained and certified it is annulled, inasmuch as
no lawful ascertainment has been or could have been made.

The repealing act nowhere in terms, relates to the election of
1896. It is well settled law that no retrospective operation will
be given to an act, unless the act plainly and unmistakably so pro-
vides. This is ruled in *Jones vs. Wootten,* 1 Harring. 81; *Smith
vs. Clemson,* 6 Houst. 180; which cases only emphasize an unbroken
current of authority.

We may not give it a retroactive effect unless compelled to do
so by express provision. There is no such express provision. Even
if there were, we should be loath to recognize the right of the legis-
lature to defeat constitutional rights by such proceeding, and would
be constrained to say that such a law was unconstitutional. It
would in effect set the Legislature above the constitution; the
creature above the creator. Otherwise the Legislature after an elec-
tion had been held, might by law stop all inquiry into such an elec-
tion and prevent the ascertainment of its results; keep out of office
the agents whom the people had elected; and keep in or put in
office persons whom the people did not elect, or whom they de-
feated. This would be setting aside the constitution; the Legisla-
ture and not the people would become the electors; and a Republi-
can form of government cease to exist. Under such a construction
what would become of the constitutional provision that such offi-
cers should be elected by the people? Such a construction would
embalm in judical sanction the craft to devise and the power to de-
feat the will of the people at the will of the Legislature.

No thoughtful person can contemplate without abhorrence the

possible results of such a construction. It would be political sui-
cide; and finds no sanction either in reason or authority.

Much stress was laid by counsel for the respondents on the case
of *State Ex rel. Bloxham vs. Board of State Canvass*, 13 Fla. 55,
where the Court held in a case very similar to the one at bar, "That
the Board of Canvass being a special tribunal created by statute,
and their duties created by statute, the repeal of the statute takes
away their function as canvassers and they cannot proceed further
in the matter under any law," and therefore they could not be com-
pelled to finish what they had commenced. We are unable to deter-
mine what were the provisions of the constitution and statutes of the
State of Florida, when this decision was rendered. The opinion
of the Court is very short, and gives no detail. We have however
carefully examined the authorities referred to in the case upon
which the Court based its decision, and we find that they do not
support such a construction. One of those authorities; *Beebe vs.
O'Brien*, 10 Wis. 481; defines the three classes of cases in which a
repeal of a statute operates to defeat proceedings theretofore had
under it, which are as follows:

1. Where the statute repealed was one creating the cause of
action.

2. Where the statute repealed related to the remedy.

3. Where the statute repealed conferred jurisdiction where it
did not before exist.

In defining this limitation Dixon, C. J., says: "After a
patient examination of all of the authorities upon this subject
within our reach, and which it is deemed unnecessary to cite here,
it is believed none can be found going beyond the principles above
laid down."

The cases cited in 13 Fla., viz: *Springfield vs. Hamden,
Commissioner of Highways*, 6 Pick. 501; *Thayer vs. Lokey*, 11
Me. 284; *Saco vs. Gurney*, 34 *id.* 14; *Heald vs. The State*, 36 *id.*
32; come under one or another of these classes, and do not involve
the issue in the case at bar. The decision is not sustained by the

authorities cited in it,, and is not so founded on reason as to command approval. It seems to have been one of the decisions rendered in the early reconstruction period of that State (1871), following the civil war when society and law were both very much unsettled. We can not therefore recognize this decision as law. It is not founded on reason, it is not supported by the authorities cited in it, nor is any reasoning of the Court given to sustain it.

It has been held and is well settled, that the enforcement of a judgment, for a penalty under a penal statute may not be stayed by the repeal of the statute because the right to the penalty is vested. How much less then can a repeal deprive the people of the vested Constitutional right to have their will ascertained and certified.

The case at bar comes under none of the classes cited in the Florida case. It is one involving a vested constitutional right in the people, to hold an election, and to have the results of that election duly and fully ascertained and enforced. It comes rather within the principle of the case of *Couch vs. Jefferies,* 4 Burr. 2460, an old and leading case, where Lord Mansfield uses this language: "Here is a vested right and it is not to be imagined that the Legislature could by general words mean to take it away. It can never be the true construction of this act to take away this vested right."

The Parliament of Great Britain is omnipotent, yet in *Sir Francis Barrington's case,* 8 Rep. 1136 b ; it is laid down as an elementary principle that an act of Parliament shall never be so construed as to do injustice. Much less then should an act of the Legislature be so construed as to destroy a Constitutional right. We must ever bear in mind that in this State the Constitution is the supreme authority.

Admit the construction claimed that the Legislature may thus annul an election and where does it lead us ? The people at the polls may defeat the party in power by a decisive majority, but still leave the election machinery in the hands of the defeated party. In ascertaining the election results the defeated party may count only such returns as are favorable to its continuance in power ; may unlawfully certify such finding ; and give certificates in pur-

suance thereof.   When proceedings are instituted in a Court of
Justice to ascertain and enforce the verdict of the people, it may
then resort to technical subterfuges, writs of error, and all other
dilatory methods known to accomplished advocates, or within the
range of acute politicians, and thereby delay a final decision until
the time to reap the fruits of the election has come and passed;
then the candidates defeated at the polls, clothed with illegal cer-
tificates may take their seats without inquiry and become self-con-
stituted judges of their own cases.   They may then pass a law to
smother all inquiry as to the result of the election.   This too in
the name of law and under the shadow of the temple of justice.
Can we conceive a case where, in the language of one of the masters
of our tongue, the law's delay and the insolence of office could
more ruthlessly set aside the dearest of human rights and interests.

It seems unnecessary to amplify this opinion further than to
say that the act of April 16, 1897, not being expressly retroactive
in its terms, may not be so construed ; that even if it were expressly
retroactive in terms, it would, in our judgment, clearly be uncon-
stitutional and therefore a nullity.   The judgment of the Court
therefore is that the answer and return of the respondents to the al-
ternative writ is insufficient and should be quashed.   It is hereby
ordered by the Court that it be quashed, and it is further ordered
that the peremptory writ of mandamus be awarded as prayed for.

NOTE :—This case was taken, on writ of error, to the Court of Errors and Ap-
peals.   Before hearing was had that Court was abolished by the promulgation of a
new constitution, and the case was transferred to the Supreme Court.   The Legisla-
ture provided that the first session of the Supreme Court should be held in June, 1898.
At that session this case was stricken from the record for want of prosecution and re-
manded back to the Superior Court.   The peremptory writ of mandamus was issued
and the respondents made return of obedience as by the said writ they were
commanded.